## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2017, 5:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jay M. Lee
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donald W. Campbell,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 28, 2017

Court of Appeals Case No.
45A03-1610-PC-2328

Appeal from the
Lake Superior Court

The Honorable
Clarence D. Murray, Judge
The Honorable
Kathleen A. Sullivan, Magistrate

Trial Court Cause No.
45G02-1406-PC-5

**Kirsch, Judge.**

[1] After his conviction for murder was affirmed on direct appeal, Donald W. Campbell filed a petition for post-conviction relief, which the post-conviction court denied. Campbell now appeals and raises the following restated issues:

> I. Whether the post-conviction court erred when it found that his trial counsel did not provide ineffective assistance when he did not object during the State's closing to a PowerPoint slide that insinuated Campbell was linked to the crime through six pieces of DNA evidence; and

> II. Whether the post-conviction court erred when it found that Campbell's appellate counsel was not ineffective for not raising the PowerPoint slide issue on direct appeal as fundamental error.

[2] We affirm.

## Facts and Procedural History

[3] In June 1992, sixty-two-year-old Donna Hogue ("Hogue") was murdered in her home in the Black Oak neighborhood of Gary, Indiana. A co-worker discovered her body on June 5, 1992, after Hogue had not appeared at work. Relevant facts, as set forth in our decision on direct appeal, are as follows:

> When co-worker Robert Powell stopped by her house to check on [Hogue], the inner door was slightly ajar, and upon entry he saw signs of a struggle: the house was in disarray, furniture was knocked over, and Donna's glasses were lying broken on the carpet. Powell found Donna's nude body lying face-down on a bed, with just a slipper on her foot, a doily tied around her neck, and a nightgown pulled up around her neck and arms. A knife

covered with a towel was sticking out of her back. Powell called the police and notified Donna's family.

The police found a blood-stained utility knife and a pool of blood in the living room next to the front door. They found pools of blood in other areas of the living room. A coffee table was overturned with a leg broken off, and a sofa cushion was on the floor. A trail of blood led to the bedroom where Donna's body was found.

An autopsy revealed that Donna had suffered a wide slash wound to her neck that cut her larynx and esophagus. She had also been stabbed nine times in the back. Six of the stab wounds had been driven so deeply that they lacerated a lung.

The case remained unsolved until November 2008, when Detective Dennis Matthew Eaton of the Lake County Sheriff's Department received an anonymous phone call from a woman claiming to have information about a 1992 murder in Black Oak. She called back a few days later, identified herself as Laurie McDonald, and said that her father Donald Campbell may have been involved in Donna Hogue's murder. Campbell's sister and Donna Hogue's brother had been married at some point.

Detective Eaton reviewed reports from the coroner's office and the crime lab. After examining a list of evidence originally collected at the scene, he and Lisa Black of the Indiana State Police Laboratory resubmitted certain items for testing. They were interested in possible DNA results, something not available in 1992.

During the investigation, Detective Eaton spoke with Loretta Earl. Loretta and Campbell divorced in 1982 but continued to live together in Black Oak until Loretta left him on May 15, 1992.

Detective Eaton also spoke with Campbell's nephew Ronnie Anglin and Ronnie's wife Judy Anglin; Campbell and his brother Tommy Campbell had been staying with them in Black Oak at the time of the crime.

Detective Eaton went to Campbell's home in Sullivan, Indiana, with a warrant for his DNA. When Campbell asked for more information, Detective Eaton declined to say anything about the case unless they were at a police department where the conversation could be recorded. They went to the Sullivan County Sheriff's Office, where Eaton took buccal swab samples from Campbell and told him he was investigating Donna Hogue's murder. Campbell repeatedly denied knowing Donna Hogue.

In June 2009, the State charged Campbell with murder.

*Campbell v. State*, No. 45A04-1109-CR-473 (Ind. Ct. App. Feb. 28, 2013).

[4]     During the eight-day 2011 jury trial, a number of witnesses testified. Among those was Campbell's nephew, Ronnie Anglin, who testified that, in May 1992, Campbell and his brother, Tommy, sometimes stayed at the Anglins' house. Ronnie testified that he had told detectives that Campbell sometimes watched television at Hogue's house and spent the night there. *Trial Tr.* at 478-80. When asked whether Campbell had told him about his going over to see Hogue, Anglin replied, "Donald didn't have to tell me . . . the whole family knew it." *Id.* at 480.

[5]     Among other witnesses, the State presented the testimony of Lisa Black, a DNA expert with the Indiana State Police crime lab. As is relevant here, Black

testified that a blood sample collected from Hogue's back, Item 5A, was comprised of a mixture that "exhibited a major DNA profile that was consistent with [] Hogue and a minor DNA profile" and that Campbell "could not be excluded as the contributor to the minor DNA profile." *Trial Tr.* at 1056. Another blood sample, Item 24, came from a swab of Hogue's body, and it contained a partial profile of Hogue's DNA along with another contributor containing a "Y" allele, indicating only that it came from a male. *Id.* at 1106.

[6] With regard to testing of hair samples, Black testified that only hairs with roots, and the accompanying cellular material, can be analyzed for DNA. *Id.* at 1071-72. Transfer can occur through primary transfer, where hair falls directly from a person to a surface, or through secondary transfer, where hair is transferred from, for instance, through clothing or when multiple people share or use objects. *Id.* at 1082-84.

[7] Black testified regarding testing of a sample of three hairs together, Item 5B, because the DNA was insufficient to submit them to individual analysis. *Id.* at 1058. Neither Hogue nor Campbell could be excluded as the source of the Item 5B hairs. *Id.* Black tested another hair recovered from Hogue's body, Item 5B5, and she determined that its DNA profile "was consistent with coming from Donald Campbell."[1] *Id.* at 1064, 1122. Two other hairs, 23A2

---

[1] Black testified that "[t]he DNA profile consistent with Donald Campbell would be found in one in 76 billion of the Caucasian population, one in nine trillion of the African-American population, and one in 71 billion of the Hispanic population." *Trial Tr.* at 1064.

and 23A5, also were determined to be Donald's within a reasonable degree of scientific certainty.[2]  *Id*. at 1079-81.

[8]  During the State's closing argument, the prosecutor presented a slide showing a circle with the word "DEFENDANT" positioned in the middle, surrounded by six arrows – each labeled with an item of DNA that Black had tested and discussed – that were pointing toward the circle ("the PowerPoint Slide"). *Pet'r's Ex*. C.  The following DNA items appeared on the arrows:  5A, 5B, 5B5, 23A2, 23A5, and 24.  *Id.*  The prosecutor stated, "So we have the defendant, ISP number 5A, 5B, 5B5, 23A2, 23A5, 24 all leading to guilty."  *Trial Tr*. at 1363.  Campbell's trial counsel did not object.

[9]  The jury found Campbell guilty.  The trial court sentenced him to fifty-eight years.  Campbell appealed his conviction and sentencing, asserting that (1) the trial court wrongly admitted Loretta Earl's testimony; (2) the trial court erred by admitting DNA evidence; (3) the State committed prosecutorial misconduct amounting to fundamental error by misstating facts in its PowerPoint presentation[3]; (4) the trial court erred by allowing the jury to use a transcript to

---

[2] For 23A2, Black stated that "the statistic is one in 13 quadrillion for the Caucasian population, one in nine quintillion for the African-American population, and one in 21 quadrillion for the Hispanic population. *Trial Tr*. at 1079-80.  For 23A5, Black testified that "the statistic is [one in] 710 billion of the Caucasian population, one in 140 trillion of African-American population, and one in 1.2 trillion of the Hispanic population."  *Id*. at 1080-81.

[3] The issue raised on direct appeal concerning the PowerPoint presentation was distinct from that presented in Campbell's post-conviction relief petition.  In the direct appeal, he had asserted that the prosecutor had committed misconduct by stating in the PowerPoint that Campbell's brother, Tommy, was disabled (and therefore, by inference, could not have murdered Hogue).

aid them in listening to Campbell's interview; (5) the trial court abused its discretion in instructing the jury; (6) the evidence was insufficient to sustain Campbell's conviction; and (7) the trial court abused its discretion in sentencing him. We affirmed Campbell's conviction and sentence. *Campbell v. State*, No. 45A04-1109-CR-473 (Ind. Ct. App. Feb. 28, 2013).

[10] Campbell filed a pro-se petition for post-conviction relief, later amended by counsel, alleging that (1) his trial counsel provided ineffective assistance for failing to object during the State's closing argument to the State's PowerPoint presentation that referenced six pieces of DNA evidence in arrows that pointed to "DEFENDANT", and (2) his appellate counsel provided ineffective assistance for failing to raise that PowerPoint presentation as fundamental error. *Appellant's App*. at 48-49.

[11] At the post-conviction hearing, the post-conviction court heard testimony from Campbell, whose testimony included his opinion that he had a good relationship with his trial attorney, Timothy Ormes ("Ormes"), and that Ormes visited Campbell and discussed the case with him. Campbell also presented the testimony of Ormes, who had been an attorney since 1987, was a county prosecutor for about eight years and then opened his own practice, which included public and private criminal defense work. Ormes had tried approximately one hundred cases, had represented murder defendants, and had dealt with DNA issues during his years of practice. As to Campbell's case, Ormes recalled that he objected during the State's closing regarding a misrepresentation in a slide and that the trial court overruled it, but the

prosecutor later acknowledged the error in her closing and corrected it. Ormes did not recall making further objections during the State's closing, noting that he had been overruled once and "it looks bad" to "keep objecting." *PCR Tr.* at 19. He opined that "it's a call" whether to object in that situation. *Id.* at 20. Campbell's appellate attorney, Mark A. Bates ("Bates"), did not testify at the post-conviction hearing.[4]

[12] The post-conviction court later issued findings of fact and conclusions of law denying Campbell's petition, and he now appeals.

# Discussion and Decision

[13] The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Benefield v. State*, 945 N.E.2d 791, 796-97 (Ind. Ct. App. 2011). A post-conviction petition is not a substitute for an appeal, nor does it afford the petitioner a "super appeal." *Id.* at 797. In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. *Id.* When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* "'To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached

---

[4] We note that the post-conviction court admitted the record from the direct appeal and took judicial notice of the underlying file. *Appellant's Br.* at 6; *PCR Tr.* at 11-12.

by the post-conviction court.'" *Id.* (quoting *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010)).

[14] Here, the post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "'A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Id.* "'The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses.'" *Id.* (quoting *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998)).

## I. Trial Counsel

[15] Campbell contends that he received ineffective assistance of trial counsel.

> When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. Second, the defendant must show that the deficient performance resulted in prejudice. To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citations omitted), *trans. denied*.  If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so.  *Benefield*, 945 N.E.2d at 797.

[16]   As we have recognized,

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review.  Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Id*.

[17]   Campbell asserts that trial counsel was ineffective for failing to object to the PowerPoint Slide and for failing to move for an admonishment or a mistrial.  "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made."  *Overstreet v. State,* 877 N.E.2d 144, 155 (Ind. 2007).

[18]   Here, the PowerPoint Slide identified six pieces of DNA evidence:  Items 5A, 5B, 5B5, 23A2, 23A5, 24.  Each of those items of DNA labeled an arrow, and each arrow pointed to the word "DEFENDANT."  *Pet'r's Ex*. C.  It is undisputed that three of the six pieces of DNA evidence – Items 5B5, 23A2,

and 23A5 – were hairs that were determined to belong to Campbell within a reasonable degree of scientific certainty. Item 5A was a blood sample that trial counsel had earlier addressed when he objected to the prosecutor's characterization of it as being "a major of [Hogue] and a minor of defendant," when in fact it was not a minor of Campbell, but rather Campbell was a minor contributor in a mixture from which he could not be excluded. Both defense counsel and the prosecutor in their respective closing arguments clarified that Item 5A was a mixture from which Campbell could not be excluded.

[19] The remaining two of the six items appearing in the PowerPoint Slide were Items 5B and 24. Item 5B was a mixture of hairs from which neither Hogue nor Campbell could be excluded; Item 24 was a blood swab that contained a partial profile of Hogue's DNA and a lesser contributor from which there was insufficient data for a DNA profile.

[20] The post-conviction court rejected Campbell's claim that trial counsel rendered ineffective assistance when he failed to object to the PowerPoint Slide, and we agree for several reasons. First, as the post-conviction court observed, trial counsel did not state that each of those six items matched or were consistent with Campbell; rather, the prosecutor characterized the items as "leading to guilty" which the post-conviction court determined was "a fair characterization" and "permissible argument," given that Campbell was not excluded from any of the items. *Trial Tr*. at 1363; *Appellant's App*. at 122.

[21] Second, even if the PowerPoint Slide constituted prosecutorial misconduct as Campbell claims, Campbell has not shown prejudice. The PowerPoint Slide was one of over seventy shown to the jury in an eight-day trial, and it did not accompany the jurors into the jury room during deliberations. During trial, Ormes had stressed the existence of an alternative suspect, namely Campbell's brother Tommy[5], and noted that Black could not confirm whether some hair belonged to Campbell or his brother. Ormes thoroughly cross-examined Black, including concerning primary and secondary transfer of hair, and he brought out issues regarding instances of contamination of DNA items in the case. Based on the record before us, we cannot say that Campbell was prejudiced by Ormes's failure to object to the PowerPoint Slide.

[22] Third, Ormes's testimony at the post-conviction hearing suggested that his decision not to object during closing argument to the PowerPoint Slide was one of strategy. At the post-conviction hearing, Ormes explained that, at trial, he objected to the prosecutor's description of Item 5A as being "a major of [Hogue] and a minor of defendant," on the basis that it mischaracterized the evidence. *Trial Tr.* at 1360. Although the trial court overruled the objection, ultimately the prosecutor corrected and clarified her characterization in rebuttal. Ormes testified that he did not object to the PowerPoint Slide because

---

[5] Ronnie Anglin's wife, Judy, testified that she saw Tommy and Donny at her house on the morning of June 5, that Tommy's shirt had a brown stain on it, and that she later saw the two of them walking away down the railroad tracks carrying bags, and not to be seen again, until Donny was apprehended. Tommy was never apprehended or seen again, and the investigators never had any of Tommy's DNA to test.

it would have been another objection during closing argument, which may have made him "look bad" in the eyes of the jury. *PCR Tr.* at 19. Ormes noted that "[i]t's a call" as to whether to interpose such objections during closing which often are not sustained, because the trial court rules that "it's argument." *Id.* at 19-20.

[23] As we have recognized, counsel is given "significant deference in choosing a strategy which, at the time and under the circumstances, he or she deems best." *Benefield*, 945 N.E.2d at 799 (quoting *Potter v. State,* 684 N.E.2d 1127, 1133 (Ind. 1997)). "'[T]rial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness.'" *Id.* (quoting *Autrey v. State,* 700 N.E.2d 1140, 1141 (Ind. 1998)). "'This is so even when such choices may be subject to criticism or the choice ultimately prove[s] detrimental to the defendant.'" *Id.* Our Supreme Court has observed, "A decision to not object to evidence when the objection may be more damaging than the evidence is within the wide range of professionally competent assistance." *Stevens v. State,* 770 N.E.2d 739, 752 (Ind. 2002), *cert. denied,* 540 U.S. 830 (2003).

[24] In this case, the post-conviction court determined that the PowerPoint Slide and accompanying commentary were not prosecutorial misconduct, and it was not ineffective assistance not to object to it. We find that Campbell has failed to show that "the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch*, 934 N.E.2d at 1144.

## *II. Appellate Counsel*

[25] Campbell contends that his appellate counsel, Bates, provided ineffective assistance. "The standard for gauging appellate counsel's performance is the same as that for trial counsel." *McKnight v. State*, 1 N.E.3d 193, 204 (Ind. Ct. App. 2013) (citing *Ward v. State*, 969 N.E.2d 46, 75 (Ind. 2012)). Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Gallien v. State*, 19 N.E.3d 303, 311 (Ind. Ct. App. 2014), *trans. denied*. Regarding a claim that counsel was ineffective in failing to raise an issue on appeal thus resulting in waiver for collateral review, judicial scrutiny is highly deferential, and the defendant must overcome the strongest presumption of adequate assistance. *McKnight*, 1 N.E.3d at 204.

[26] Here, Bates asserted on direct appeal, among other issues, that the prosecutor committed misconduct when, in closing argument, she stated that Campbell's brother, Tommy, was handicapped, inferring that he could not have been the person who murdered Hogue. In this appeal, Campbell maintains that "[a] much stronger argument would [have been] that the prosecutor, in the critical period of closing argument, misconstrued the evidence [in the PowerPoint Slide], attempting to make the State's case against Campbell stronger than it actually was." *Appellant's Br.* at 21. Campbell claims that his appellate counsel rendered ineffective assistance "by raising the issue of [the] description of his brother as handicapped instead of arguing the fundamental error of overemphasizing key pieces of DNA evidence[.]" *Reply Br.* at 9.

[27] We employ a two-part test to evaluate "waiver of issue" claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). If the analysis under this test demonstrates deficient performance, then we examine whether, the issues that appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Gallien*, 19 N.E.3d at 307. "Counsel's performance is rarely found ineffective when the issue is [counsel's] failure to raise a claim on direct appeal." *Sanders v. State*, 764 N.E.2d 706, 714 (Ind. Ct. App. 2002), *trans. denied*, *cert. denied*, 537 U.S. 916 (2002). One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *McKnight*, 1 N.E.3d at 204.

[28] In this case, we cannot say that a claim regarding the PowerPoint Slide was "clearly stronger" than the claims that Bates pursued on direct appeal, nor was this unraised issue "clearly more likely to result in reversal or an order for new trial." *Henley*, 881 N.E.2d at 649 (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). Campbell's theory at trial was not only that the State could not prove that he murdered Hogue, but also that his brother Tommy may have been the person who killed Hogue. It was reasonable strategy for Bates to assert the claim on direct appeal that the State committed prosecutorial misconduct when it incorrectly represented Tommy as being handicapped and, by inference, unable to commit the crime, when part of Campbell's theory of defense was that Tommy may have done it.

[29] The post-conviction court determined that the PowerPoint Slide was a fair comment on the evidence and that appellate counsel was not ineffective for not raising the issue "as there was little chance of prevailing." *Appellant's App.* at 124. Campbell has not demonstrated that the evidence is without conflict and leads only to a conclusion opposite that of the post-conviction court. The post-conviction court did not err in denying Campbell's petition.

[30] Affirmed.

Mathias, J., and Altice, J., concur.